IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

EXPPHA, LLC f/k/a PREFERRED
PHYSICIANS HEALTHCARE
ALLIANCE, L.C.,

CASE NO.

    Plaintiff,

vs.

KEPRO ACQUISITIONS, INC.,

    Defendant.

___

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, EXPPHA, LLC f/k/a PREFERRED PHYSICIANS HEALTHCARE ALLIANCE, L.C., ("EXPPHA"), sues Defendant, KEPRO ACQUISITIONS, INC. ("KePRO"), and alleges:

### INTRODUCTION

1. This action arises from KePRO's breach of a multimillion dollar Asset Purchase Agreement with Plaintiff, EXPPHA, formerly known as Preferred Physicians Healthcare Alliance, L.C. Having developed extremely valuable medical management software products known as "Med Manager" and "Med Manager Mobile" (collectively, "Med Manager"), a suite of applications developed to support integrated health care management services for health care providers administrators, and insurance companies, EXPPHA was courted and finally convinced by KePRO to enter into the Asset Purchase Agreement (hereinafter, the "Agreement"), a true and correct copy of which is attached hereto as **Exhibit "A."** EXPPHA sold KePRO substantially all of EXPPHA's assets, including the coveted Med Manager software along with other components, such as, a website, self-management tools, and online reports. Rather than paying EXPPHA a

single, lump sum payment at closing for the assets, KePRO negotiated to defer a portion of the consideration to be paid for the assets under an "Earnout" arrangement by which EXPPHA would be paid on a "per member per year" [PMPY] basis for each new member "covered by or under" plans offered by KePRO's clients to their members. To further induce EXPPHA to sell its assets, KePRO also agreed to "use all reasonable efforts to market and sell utilization management, case management, disease management or wellness services utilizing the [Med Manager] Software to new clients and existing clients of [KePRO]." The software product, Med Manager, performed flawlessly, but not so, KePRO, as it dramatically failed to "market and sell" services utilizing the software. And when KePRO was able to successfully market and sell the services, KePRO reneged on its Earnout payment obligations to EXPPHA. To collect the millions of dollars owed under the Earnout arrangement, EXPPHA has brought this action.

## JURISDICTION, PARTIES, & VENUE

2. This is an action for damages that exceed $15,000.00, exclusive of costs, interests and attorney's fees.

3. At all times material to this action, EXPPHA was and is a Florida limited liability company.

4. At all times material to this action, KePRO was and is a foreign corporation authorized to do business in Florida with offices in Orange County, Florida.

5. Under Section 47.011, Florida Statutes, venue is proper in Orange County, Florida because KePRO operates a business located in Orange County, and because the cause of action alleged in this Complaint accrued in Orange County.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

6. KePRO and EXPPHA are entities engaged in providing medical management services to commercial and public clients.

7. A key aspect of EXPPHA's business consisted of an advanced medical management software which supported integrated care coordination and enabled EXPPHA to follow the patient's progress through all aspects of their care.

8. KePRO negotiated to purchase substantially all of EXPPHA's assets along with the desired software, primarily because KePRO was unable to develop its own medical management software.

9. Instead of making a lump sum payment for the assets, KePRO wanted EXPPHA to assume some of the risk associated with the software, so KePRO negotiated to pay EXPPHA an upfront fee along with three Earnout payments to be paid out over the next three years based on a per member per year ("PMPY") fee.

10. Various formulas were discussed among EXPPHA and KePRO, but it was decided by both parties that calculating the Earnout based on the number of members "covered" by a client's plan would be objective and easily determinable.

11. KePRO represented that EXPPHA should expect Earnout payments conservatively valued of at least **$770,400.00** a year, simply based on KePRO's existing clients that were utilizing other medical management software but would be rolled over to utilize the Med Manager software. KePRO was to expand the market adoption of Med Manager by using reasonable efforts to market and sell services utilizing Med Manager to new and existing clients of KePRO, further increasing the payments that EXPPHA could reasonably expect under the Earnout.

12. Relying upon the representations made by KePRO concerning the expected economic performance under the Earnout, EXPPHA and its principals agreed to three-year noncompetition and nonsolicitation requirements in the contract.

3

13. After extensive negotiations, EXPPHA and KePRO entered into the Agreement dated July 16, 2010.

14. Consistent with the terms of the Agreement, EXPPHA was to have received Earnout payments equal to thirty-six cents ($.36) per Member per year for each net new Member covered by or under each Health Care Plan (the "Earnout"). (Ex. A at ¶ 2.1(iii).)

15. The Earnout was to have been paid to EXPPHA annually within sixty (60) days after the first, second, and third year anniversary dates of the closing, which occurred on July 16, 2010. (Ex. A at ¶ 2.1(iii).)

### KEPRO FAILS TO MARKET MED MANAGER

16. KePRO almost immediately experienced problems marketing and selling services utilizing Med Manager. On one occasion, KePRO, which was led on the sales initiative by the director of operations, Karen Eaton, made several materially false statements regarding Med Manager to the State of Florida while bidding on the Florida Medicaid business. This was business that KePRO had already serviced before the purchase of EXPPHA's assets, and for all intents and purposes, was business that KePRO should have easily won again.

17. KePRO knew of the problems with the Florida contract bid before the closing with EXPPHA, but failed to disclose the problems to EXPPHA.

18. KePRO also failed to properly market the Med Manager software by imprudently attempting to modify the software with disastrous consequences, causing loss of business, and causing further damage directly to EXPPHA.

### KEPRO FAILS TO PAY EARNOUT

19. On August 15, 2011, EXPPHA provided an invoice to KePRO in the amount of **$960,336.72**, representing the first Earnout due to EXPPHA under the Agreement with

Case 6:12-cv-01928-RBD-GJK Document 2 Filed 12/28/12 Page 5 of 7 PageID 12

payment due on or before September 16, 2011, primarily attributable to the large the number of covered lives eligible under the Blue Cross & Blue Shield of Michigan (BCBS insurance plan after BCBS engaged KePRO to utilize its services).

20. KePRO failed and refused to make timely payment.

21. EXPPHA's principals, Dr. Edward Cabrera and Dianna Noecker, R.N., both of whom had been hired by KePRO in conjunction with the asset purchase, objected to KePRO's breach.

22. A few days later, KePRO effectively terminated Cabrera and Noecker without cause or justification.

23. The only Earnout received by EXPPHA was a partial payment of $55,704.60 received on October 19, 2011.

### KEPRO ATTEMPTS TO REVERSE-ENGINEER AND COPY MED MANAGER

24. KePRO desired to purchase EXPPHA's highly coveted Med Manager software primarily because KePRO lacked the capability to develop its own medical management software.

25. Since the purchase, KePRO has embarked on a campaign to mimic the functionality and programming of Med Manager while also making slight modifications and renaming it as its own software program called, "Atrezzo," apparently to attempt to avoid paying EXPPHA for services sold utilizing the Med Manager software, and claiming instead that the services utilized "Atrezzo."

### EXPPHA SUFFERS DAMAGES

26. As a direct and proximate result of KePRO's numerous breaches, EXPPHA has suffered and continues to suffer significant damages due to KePRO's actions in the form of: (i)

5

damages for the Earnout that was not paid for services provided on a PMPY basis related to clients such as BCBS; (ii) damages for the Earnout for business lost as a result of KePRO's gross mismanagement of the sales and marketing; and (iii) damages for any business done utilizing any software program derived in whole or in part from any of the technological know-how, design, programming, or intellectual property related to Med Manager.

27. All general and statutory conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused by KePRO's actions.

## COUNT I
## BREACH OF CONTRACT

28. EXPPHA sues KePRO for damages exceeding $15,000.00 for breach of contract.

29. EXPPHA realleges, incorporates, and asserts by reference the allegations set forth above in Paragraphs 1 through 27.

30. EXPPHA and KePRO entered into the Agreement.

31. Under the Agreement, KePRO had certain obligations, including remitting to EXPPHA thirty-six cents ($.36) per Member per year for each net new Member covered by or under each Health Care Plan for three years (the "Earnout").

32. The first Earnout was due on or before September 16, 2011; the second Earnout was due on or before September 16, 2012, and the third Earnout is due on September 16, 2013.

33. KePRO committed material breaches of the Agreement as described above.

34. As a direct and proximate result of KePRO's breaches, EXPPHA has suffered damages, including without limitation, loss of monies due under the Agreement.

35. Under the Agreement, KePRO owes EXPPHA the remaining balance due under the first Earnout and the monies due to EXPPHA under the second Earnout, together with interest from the date of each payment due.

36. Under the Agreement, EXPPHA is entitled to recover from KePRO all reasonable attorney fees and costs incurred in enforcing the Agreement. EXPPHA has retained the firm of Morgan & Morgan, agreeing to pay reasonable fees for its services.

WHEREFORE, EXPPHA demands judgment against KePRO for direct and consequential damages, prejudgment interest, attorney's fees, and costs.

## JURY TRIAL DEMAND

EXPPHA demands a trial by jury for all issues so triable.

Dated this 9th day of November, 2012.

Tucker H. Byrd
Florida Bar No. 381632
Scottie N. McPherson
Florida Bar No. 085137
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 420-1414
Facsimile: (407) 245-3406
Primary Email: TByrd@BusinessTrialGroup.com
Secondary Email: SMcpherson@BusinessTrialGroup.com
*Attorneys for the Plaintiff*